UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE SCOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>META PLATFORMS INC.,<br><br>    Defendant. | Case No.  25-cv-09955-TSH<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**<br><br>Re: Dkt. No. 39 |

## I.    INTRODUCTION

Plaintiff Natalie Scott, proceeding *pro se*, filed suit against Defendant Meta Platforms, Inc. ("Meta"), alleging that she suffered harm in connection with her Facebook account. ECF No. 1-2. Pending before the Court is Meta's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 39 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the March 12, 2026, hearing. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II.    BACKGROUND

### A.    Factual Background

Scott, a New York resident, is a Facebook account holder. Compl. at 1 (ECF No. 1-2). Meta, a Delaware corporation with a principal place of business in California, is "an American multinational technology company" that owns and operates several social media platforms, including Facebook. *Id.*; Not. of Removal at 3 (ECF No. 1).

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 35, 37, 38.

Overall, Scott alleges that her "Facebook account was weaponized against her" when it was "used for intense privacy violations, offline tracking and harassment, sexual solicitation, intentional psychological abuse," and "fundamental features on her account were altered without her consent to inflict reputational damage."  Compl. at 2.

### 1.    Meta's Services

Meta owns and operates Facebook.  *Id.* at 1.  Every Facebook user must agree to Meta's Terms of Service ("TOS").  Declaration of Michael Duffey ("Duffey Decl.") ¶ 3, Ex. A (TOS)[2] (ECF No. 39-1).

The TOS contains a section, "What you can share and do on Meta Products," that states, in relevant part:

> We can remove or restrict access to content that is in violation of these provisions.  We can also suspend or disable your account for conduct that violates these provisions, as provided in Section 4.2.

TOS at Section 3.2.

The TOS contains a section, "Limits on liability," that states:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them.  Our Products, however, are provided 'as is,' and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections.  To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT.  We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products.  Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages.  Our

---

[2] Meta's TOS are publicly available at the following link:  https://www.facebook.com/terms/.  *See* Mot. at 2 n.1.

> aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

*Id.* at Section 4.3 (emphasis in original).

Finally, the TOS contains a section, "Disputes," that states, in relevant part:

> We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us.  If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.

> You and Meta each agree that any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County.  You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions.

*Id.* at Section 4.4.

### 2.    The Parties' Relationship

Scott has a "Facebook account under the name of Aphrasia Lee" (the "Account") that "has been active for a few years."  Compl. at 1.  Meta locked the Account "and prevented [Scott] from accessing it for 1.5 years."  *Id.* at 3.

On May 30, 2021, Scott requested access to her Account from Meta.  *Id.* at 5–6.  On June 1, 2021, Scott's password on her Account was changed, and she was blocked from accessing her Account.  *Id.* at 13–14.  Also on June 1, 2021, Scott "noted her complaint to the Attorney General's office about it (ie:  Intake #1-262394402)."  *Id.* at 13.  When Scott tried to access her Account, she "was taken to multiple verification steps and pages" and did not obtain access to her Account.  *Id.* at 14.

Scott's Account was deactivated in early July 2022.  *Id.* at 6.  On July 27, 2022, Scott's Account "was blocked from her access."  *Id.* at 13.  After obtaining access to the Account, Scott deactivated the Account again.  *Id.*

Meta locked Scott's Account "from August 2, 2022 for close to 1.5 years."  *Id.* at 15.  Scott hired a lawyer, Deborah Blum, to assist Scott with regaining access to her Account.  *Id.*  Blum

United States District Court
Northern District of California

referred Scott to Patrick Bocash[3] "after there was a continued delay and missed attempts at regaining access" to Scott's locked Account. *Id.* On August 3, 2022, Scott received an email from Facebook Security that her Account was reactivated. *Id.* at 16. But Scott was still locked out of her Account. *Id.* Scott regained access to her Account in December 2023. *Id.* at 17.

While Scott's account was locked between 2022–2023, she "decided to open a new Facebook account to research any posted deepfakes on herself." *Id.* Meta would not allow her to use her name, Natalie Scott, for any new accounts. *Id.* Scott used the new account "infrequently to check on other user accounts." *Id.* When checking other accounts, Scott "came across two users who had either her cellphone # or email address in their user profile." *Id.* at 18.

On May 11, 2024, Scott logged out of her Account, and "she was taken to 3 tabs of HTML code" of her Account user data that showed up on the tabs. *Id.* at 6. Scott's Account was deactivated on February 16, 2025. *Id.* at 5.

Between 2021–2025, Scott sent emails to Meta reporting issues with her Facebook Account—she emailed "Facebook Help Support," "Facebook Security," "Mark Zuckerberg," "Kevin O'Donnell,"[4] and "Facebook Escalation Team." *Id.* at 2, 5–8, 12–13, 15–16, 18, 20.

### 3.    Scott's Allegations

Scott alleges the following in the Complaint. Scott's Account was weaponized "over a period of 2 plus years." *Id.* at 8. Overall, during this time, Meta did not respond to Scott's email communications, prevented Scott from accessing her Account, tracked Scott's location and data offline, deceived Scott about how the Facebook platform operated, used her Account for experimentation, and allowed her Account to be used for psychological abuse. *Id.* at 1–4, 20–22.

Meta neglected "to take measures to protect, inform and respond" to Scott's notifications and complaints of continued misuse of her Account, and her pleas for help. *Id.* at 22. Scott contacted Meta "a few times about privacy violation concerns, questioned how her deactivated account was still being accessed and complained about the resulting offline harassment, but she

[3] The Complaint does not explain who Bocash is.

[4] The Complaint does not explain who O'Donnell is.

United States District Court
Northern District of California

never received a reply." *Id.* at 12. For example, Scott emailed Facebook Security multiple times in 2022 regarding unauthorized access to her Account. *Id.* at 5–6. When her Account "was locked by Facebook from August 2, 2022 for close to 1.5 years," Scott emailed Facebook Security "multiple times about receiving email notifications about other [Facebook] users activity and friend requests being accepted on" her Account. *Id.* at 15. Scott emailed Facebook Help Security during this time her Account was locked "to notify them that her cellphone number was being used in the Facebook profile of another user." *Id.* at 18. And on February 16, 2025, Scott emailed Facebook Help Support about unauthorized activity on her Account when the Account "was supposed to have been deactivated." *Id.* at 5.

Meta intentionally blocked Scott's access to her Facebook Account for one and a half years. *Id.* at 21. After Meta locked Scott's Account in 2022, it seemed like Meta "was finding reasons to deny her access" to her Account. *Id.* at 16. Scott received "mismatched STM codes" when trying to access her Account, encountered multiple pages for account verifications, and was unable to regain access to her Account when Meta would not accept her "legitimate government identification." *Id.* at 12–15, 21.

Scott believes that Meta used her Account "for experimentation by Facebook." *Id.* at 3. Scott's Account Activity Log showed "duplicate posts for a single post" which led her to believe that "a duplicate account was being shown and visible to other Facebook users that she was unable to view." *Id.* at 7. Between 2023–2024, Scott received multiple friend suggestions on her Account for "women in bras and bare breasts" and women "in the sex trade." *Id.* at 9. After Bocash "contacted his Facebook contact, these sexually explicit friend suggestions stopped." *Id.* This made Scott question if Facebook employees "were responsible for bombarding her with friend suggestions laden with sexual content." *Id.* Scott "was being facially tagged and pointed out offline when she was in public." *Id.* at 10. For example, Scott was stalked and facially profiled in 2023 while running errands in New York City, subjected to vulgar comments in 2023 during a stay in New Jersey, and verbally harassed in 2024 while residing in Oregon. *Id.* at 10–11. Scott experienced anxiety because she believed her Account "was being used for experimentation" and "for offline harassment and public shaming." *Id.* at 7.

United States District Court
Northern District of California

Meta used Facebook to track Scott's "cellphone usage off the Facebook platform," her "offline communication," her cellphone contacts, and her location. *Id.* at 4, 9, 20–21. These "privacy violations . . . resulted in unwanted tracking, facial profiling and tagging, stalking and harassment offline which has occurred over a period of 13 years." *Id.* at 22. For example, between August 2, 2022, to November 30, 2022, Scott received Account notifications about Facebook users linked to her Account who were located in Southeast Asia "during the period when [Scott's] employment project locations were based in Southeast Asia." *Id.* at 9. Scott felt like she was being tracked because she received "notifications about men from locations where her remote projects were based." *Id.* And in 2023, Meta used Facebook to track

> the new cellphone contact that [Scott] began to communicate with on her phone via text. The contact was her cousin, Dexter Raphael. Since her Facebook account was still locked, [Scott] created a new Facebook account that she accessed only to view other users online - she had no phone, no user profile data except her cellphone number. And she imported no contacts from her cellphone.

*Id.* at 20. On April 21, 2023, Meta, through Facebook, "sent the friend suggestion of Dexter Raphael to [Scott's] new Facebook account" even though the new account "had no friends, no posts, no identifiable information and only had [Scott's] cellphone telephone number." *Id.* Given that Facebook has billions of users, the friend suggestion showed that Meta "was tracking [Scott's] cellphone usage off the Facebook platform." *Id.* at 20–21.

Meta, or its Facebook platform, deceived Scott "about the real number of people who were linked to her account as friends, whom obtained access to her data when she sent posts, the security of her account after it was locked or deactivated, and if posts with harmful content about here was being sent from other accounts in her name, and if photo or sexual content about her was sent from her account to male users." *Id.* at 21–22. For example, Facebook's privacy settings allow users to create "Only Me" posts where content posted to a Facebook account by the account holder is only accessible to that account holder. *Id.* at 7–8. But Scott's "Only Me" posts were accessed by other Facebook users even when no one else was supposed to view them. *Id.* at 22. Even on this privacy setting, "'everyone' or 'anyone' was still able to access" her Account and posts. *Id.*

Collectively, Scott's experiences with Meta and its Facebook platform "caused a lot of stress, anxiety, psychological duress, feelings of isolation and being abused." *Id.* at 21. Because there was no level of privacy for Scott on her Account, there was "a negative effect on [her] psyche and her trust in technology and social media." *Id.* at 22. When Meta unnecessarily prevented Scott from accessing her Account, she experienced "stress, mental duress and feelings of helplessness" because she was "being psychologically attacked and toyed with." *Id.* at 14–15.

**B.      Procedural Background**

On March 17, 2025, Scott, proceeding *pro se*, filed suit against Meta in the Supreme Court of the State of New York, County of Kings.[5] ECF No. 1-2 ("Compl."). Scott's Complaint does not contain explicit causes of action. Scott alleges that she suffered "psychological, emotional, and reputational damage, mental and emotional duress, and privacy violations that have resulted in unwanted tracking, facial profiling and tagging, stalking and harassment offline which has occurred over a period of 13 years." Compl. at 22. Further, Scott alleges that she was harmed by (1) "the neglect of Facebook to take measures to protect, inform, and respond to [Scott's] notifications and complaints of continued misuse of her account, and her pleas for help"; and (2) the "weaponization of her Facebook account by hackers, Facebook employees or any third party who manipulated settings and used it as a tool of offline harassment." *Id.* Scott requests "compensatory damages in the amount of $700,000 or the maximum amount allowed in civil court to compensate" her. *Id.*

On May 23, 2025, Meta removed the case to the United States District Court for the Eastern District of New York. ECF No. 1 ("Not. of Removal"). On October 24, 2025, the Eastern District of New York transferred the case to the Northern District of California.[6] ECF No. 28.

On January 13, 2026, Meta filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 39 ("Mot."). Meta also filed a request for judicial notice.

---

[5] *See Natalie Scott v. Meta Platforms, Inc. fka Facebook*, Index No. 237-2025.

[6] *See Scott v. Meta Platforms, Inc.*, No. 25-cv-2888-NRM(TAM), 2025 WL 2997300 (E.D.N.Y. Oct. 24, 2025).

United States District Court
Northern District of California

ECF No. 40.  On February 12, 2026, Scott filed an Opposition.[7]  ECF No. 46 ("Opp.").  On February 24, 2026, Meta filed a Reply.  ECF No. 48 ("Reply").  On February 27, 2026, Scott filed a letter brief for "Supplemental Material and Objection to Reply Evidence."  ECF No. 49.

### III.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[7] Scott initially filed an opposition on February 10, 2026.  ECF No. 44.  On February 11, 2026, Scott filed a letter brief with the Court requesting to submit a revised opposition and new exhibits. ECF No. 45.  Scott filed the revised opposition and exhibits on February 12, 2026.  ECF No. 46. On February 23, 2026, Scott filed an "additional response to Meta's dispute" regarding her IIED claim.  ECF No. 47.  Meta does not object to Scott's revised opposition at ECF No. 46. *See generally* Reply.  However, Meta objects to the Court considering Scott's additional arguments with respect to her IIED claim put forward in ECF No. 47. *See id.* at 7 n.3.  The Court therefore considers Scott's Opposition at ECF No. 46 but does not consider Scott's IIED arguments in ECF No. 47.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV.    DISCUSSION

Meta moves to dismiss Scott's Complaint in its entirely for failing to state a cognizable claim. Mot. at 1. Overall, Meta argues that (1) the Complaint fails to satisfy Federal Rule of Civil Procedure 8; (2) Meta's TOS bars Scott's claims; (3) the Complaint fails to state a plausible claim; and (4) Scott's claims are barred by Section 230 of the Communications Decency Act. *Id.* at 1–2.

In sum, the Court concludes that Scott's Complaint fails to comply with Federal Rule of Civil Procedure 8. Therefore, dismissal is warranted. Because it is not clear that the deficiencies of the Complaint could not be cured by amendment, leave to amend is appropriate.

### A.    Request For Judicial Notice

Meta requests the Court take judicial notice of one document: the Meta Terms of Service (TOS). ECF No. 40; *see* Duffey Decl., Ex. A. Meta's TOS are publicly available online. *See* Mot. at 2 n.1. Scott does not oppose the request. *See generally* Opp.

Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the

9

United States District Court
Northern District of California

Court's consideration of extra-pleading materials is limited and matters outside of the pleading cannot be considered without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6), 12(d). However, there are two exceptions—the incorporation-by-reference doctrine and judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Under the Federal Rules of Evidence, the Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Here, the Court agrees that it is appropriate to take judicial notice of Meta's TOS "because they are publicly available webpages and their contents are not subject to reasonable dispute." *Zhang v. Twitter Inc.*, No. 23-cv-00980-JSC, 2023 WL 5493823, at *2–3 (N.D. Cal. Aug. 23, 2023); *see also Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of Google's terms of service because they are "not the subject of reasonable dispute and their authenticity is not in question").

Accordingly, the Court **GRANTS** Meta's request to take judicial notice of Meta's TOS.

**B.      Motion For Leave To File Sur-Reply**

On February 27, 2026—after briefing on Meta's Motion was complete—Scott filed a letter brief for "Supplemental Material and Objection to Reply Evidence." ECF No. 49. Scott requests approval to submit to the Court (1) "Supplemental Material with detailed references to the claims that [she] submitted previously" to the Court and Meta; and (2) "an Objection to Reply Evidence for any new argument or evidence that Meta presented in its Reply Brief without" the Court's pre-approval. *Id.* The Court construes Scott's letter brief as a motion for leave to file a sur-reply.

Under the Local Rules, a party must obtain the court's permission to file supplementary material after a reply is filed, unless the additional material comprises an objection to new evidence proffered in the reply or a newly published judicial opinion. Civ. L.R. 7.3(d).

Here, the Court finds that granting Scott leave to file a sur-reply is not warranted. To be sure, "[i]f a party raises a new argument or presents new evidence in a reply brief, a court may

consider these matters only if the adverse party is given an opportunity to respond." *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1276 (N.D. Cal. 2014) (citing *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040–41 (9th Cir. 2003)).  However, Scott fails to identify any new evidence or legal argument proffered by Meta for the first time in Meta's Reply.  First, Meta did not submit any evidence with its Reply.  *See generally* Reply.  Second, Scott can address her concern—that "Meta has not referred to or viewed the Exhibits which [she] submitted with [her] original civil lawsuit"—in her amended complaint.  ECF No. 49.  Because an amended complaint replaces the previous complaint, Scott must attach any exhibits that she wishes to include with her complaint to her amended complaint.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  Therefore, Scott has not demonstrated a valid reason exists for additional briefing.  *Cf. Banga*, 29 F. Supp. 3d at 1276.

Accordingly, the Court **DENIES** Scott's request to file a sur-reply.

**C.      Sufficiency Of Pleading**

Meta argues that the Complaint fails to comply with Rule 8's pleading standards because it "fails to describe any alleged conduct by Meta with the coherence necessary to give Meta notice of any specific claim asserted against it."  Mot. at 5:23–6:18.  Meta further argues that under Rule 12(b)(6), the "Complaint fails on the merits because it fails to state a claim upon which relief can be granted."  *Id.* at 9:1–13:4.

Scott contends that she provided "factual evidence that shows Meta's negligence" and that its "wrongdoing was in its blatant breach of its 'Duty of Care' and in its Intentional Tort."  Opp. at 6–8.  Scott further contends that "Meta was negligent in its 'Duty of Care' and enforced Intentional Tort," misled "users on the functionality and security of basic security features," violated "data protection and privacy laws," and failed to design a safe product.  *Id.* at 9–15.  Finally, Scott contends that she was harmed by Meta's "product design," by "the reckless behavior of the employees who represent Facebook," and by Meta's "privacy intrusion."  *Id.* at 17, 19.

**1.      Rule 8**

Under the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

United States District Court
Northern District of California

11

8(a)(2). The failure to comply with Rule 8 is a basis for dismissal that is not dependent on whether the complaint is without merit. *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written . . . without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *Id.* at 1180. To comply with Rule 8, a complaint need not provide detailed factual allegations, but it is "a plaintiff's obligation to provide the grounds of his entitlement to relief." *Twombly*, 550 U.S. at 555 (cleaned up). A plaintiff must do more than assert "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the plaintiff must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

Here, because Scott is a *pro se* plaintiff, the Court must construe her pleadings liberally and afford her the benefit of the doubt. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). However, Scott's *pro se* status does not relieve her of conformity to the pleading rules. *See, e.g.*, *Romano v. U.S. Army Core of Eng'rs*, No. 3:17-cv-00930-JD, 2017 WL 6448221, at *1 (N.D. Cal. Dec. 18, 2017).

The Ninth Circuit recently held that "shotgun pleadings," where "a party indiscriminately incorporates assertions from one count to another," can serve as a basis for dismissal under Rule 8. *Gibson v. City of Portland*, 165 F.4th 1265, 1288–90 (9th Cir. 2026); *see id.* at 1290 ("We have a prudential obligation to clarify to district courts that in an appropriate case, like this one, they can dismiss shotgun pleadings."). In other words, shotgun pleadings "that fail to provide the opposing parties and the district court with sufficient notice of the claims and their basis" fail under Rule 8. *Id.* at 1290. Importantly, "district courts do not have to accept such shotgun pleadings. It is not the job of the district courts to make sense of the pleading, to supply facts to support the claim, or to imagine the claims that might fit the facts." *Id.* at 1289. Complaints that fail "to separate into a different count each cause of action or claim for relief" are one type of shotgun pleading. *Id.* at 1288 (citation omitted); *see also* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense."). As are complaints that are "replete with

12

conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Gibson*, 165 F.4th at 1288.

Applying this framework, the Court concludes that Scott's Complaint does not comply with Rule 8. Meta is correct that the Complaint "does not allege any specific claims." Mot. at 6:5–18; *see also* Reply at 2:10–26 ("[T]he Complaint fails to satisfy Rule 8 because it consists entirely of vague and disjointed allegations that do not assert any specific cause of action."). Under a fair reading of the Complaint, as informed by Scott's Opposition, the Court finds that Scott attempts to allege claims sounding in negligence, emotional distress, and invasion of privacy. *See* Compl. at 22 (discussing "the neglect of Facebook" and "emotional duress, and privacy violations"); Opp. at 9–21 (discussing claims for negligence, IIED, and "privacy intrusion"). But an *attempt* is not enough—the threshold question under Rule 8 is whether Scott pleads sufficient facts to give Meta "fair notice of what the claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (simplified). In *Gibson*, the Ninth Circuit explained that the plaintiff's complaint violated Rule 8 because, among other things, the complaint bundled five separate causes of action into a single claim, each of which was apparently supported by *all* facts alleged in the preceding paragraphs. *Gibson*, 165 F.4th at 1291. So too here. Scott's Complaint bundles any possible causes of action into one lump statement. *See* Compl. at 22. And the Complaint does not explain which factual allegations are tied to which causes of action. To comply with Rule 8, "[f]actual allegations, however detailed, must be tied to corresponding causes of action." *Gibson*, 165 F.4th at 1293. Thus, like *Gibson*, Scott's Complaint is inadequate because it fails to link alleged facts to causes of action. *Id.* at 1291.

Absent a Rule 8-compliant pleading, the Court is left to speculate about the causes of action pleaded by Scott. *Id.* at 1295. However, Scott may replead her Complaint to comply with Rule 8's pleading requirement. *See id.* at 1290 ("But when district courts identify shotgun pleadings, they should not hesitate to afford such parties one last opportunity to make themselves understood."). To do so, Scott must amend the Complaint to allege: (1) the specific laws or rights that she thinks Meta violated; (2) for each law or right, state the specific factual allegations that connect Meta with the alleged wrongdoing, including dates, the names of people involved, and

13

what those people did to her; and (3) how she was harmed.

Accordingly, the Court **GRANTS** Meta's motion to dismiss the Complaint in its entirety. The Court **GRANTS** Scott leave to amend.  In the absence of a Rule 8-compliant pleading, the Court declines to address Meta's remaining arguments because the Court does not know what facts are connected to which causes of action.

**V.    CONCLUSION**

For the reasons stated above, the Court **GRANTS** Meta's Motion to Dismiss.  However, given Scott's *pro se* status, and because it is not clear that the deficiencies of the Complaint could not be cured by amendment, the Court **GRANTS** Scott the opportunity to file an amended complaint.  Scott may file an amended complaint by April 2, 2026.

**A.    REQUIREMENTS FOR AMENDED COMPLAINT**

Because an amended complaint replaces the previous complaint, it may not incorporate claims or allegations in the original complaint by reference.  *Ferdik*, 963 F.2d at 1262.  Instead, any amendment must include all of the facts and claims to be presented and all of the defendants that are to be sued.  In addition, any amended complaint must include the following sections:

> **Caption Page**
> On the first page, list the names of the defendant(s), the case number used in this order (25-cv-9955-TSH), the title ("FIRST AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.
>
> **Form of Pleadings**
> The factual allegations and claims must be written in numbered paragraphs, each limited as far as practicable to a single set of circumstances.
>
> **Subject Matter Jurisdiction**
> The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case.  A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.
>
> **Parties**
> In separate paragraphs for each party, identify the plaintiff(s) and defendant(s) in the case.

14

United States District Court
Northern District of California

**Statement of Facts**
Explain the important facts in your case in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured.

**Claims**
Include a separate heading for each legal claim (Claim 1, Claim 2, etc.), identifying the specific law that you think the defendant(s) violated and explaining in numbered paragraphs what each defendant did to violate each law.

**B.    RESOURCES**

Scott may wish to seek assistance from the Federal Pro Bono Project, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco.  You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982.  At the Federal Pro Bono Project, you will be able to speak with an attorney who may be able to provide basic legal help but not representation.  More information is available at https://www.cand.uscourts.gov/pro-se-litigants/.

Scott may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case.  The handbook is available in person at the Clerk's Office and online at:

https://www.cand.uscourts.gov/pro-se-litigants/.

**IT IS SO ORDERED.**

Dated: March 3, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

15