United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NATALIE SCOTT,
Plaintiff,
v.
META PLATFORMS INC.,
Defendant.

Case No. 25-cv-09955-TSH

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Re: Dkt. No. 77

## I. INTRODUCTION

Plaintiff Natalie Scott, proceeding *pro se*, filed suit against Defendant Meta Platforms, Inc. ("Meta"), alleging that she suffered harm in connection with her Facebook account. ECF No. 1-2. Pending before the Court is Meta's Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 77 ("Mot."). The Court finds this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b) and **VACATES** the July 30, 2026, hearing. For the reasons stated below, the Court **GRANTS** the motion.[1]

## II. BACKGROUND

### A. Factual Background

Scott, a New York resident, is a Facebook account holder. First Am. Compl. ("FAC") at 4, 9, 29 (ECF No. 65); Not. of Removal at 2 (ECF No. 1). Meta, a Delaware corporation with a principal place of business in California, "owns and operates online services, including Facebook, that allow users to connect with other users; post content like photos, videos, and text; and view the content of other users." Not. of Removal at 3; Mot. at 2:7–8.

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 35, 37, 38.

Overall, Scott alleges that (1) "Meta was negligent in applying appropriate and timely security notifications when [Scott's] account was accessed by third parties"; (2) Meta "intentionally removed content from her Activity Log which is used to document user activity"; (3) Meta "enabled other users to send and accept friend requests on her account without her consent"; and (4) "Meta's employees such as Facebook Security and Facebook Help Support neglected [Scott's] emails about repeated privacy and security issues on her account even during times when her account was deactivated or blocked." FAC at 4.

**1. Meta's Services**

Meta owns and operates Facebook. Mot. at 2:7–8. Every Facebook user must agree to Meta's Terms of Service ("TOS"). Declaration of Michael Duffey ("Duffey Decl.") ¶ 3 (ECF No. 77-1), Ex. A (TOS) (ECF No. 77-2). The TOS govern "access and use of Facebook, Messenger, and the other products, websites, features, apps, services, technologies, and software" Meta offers. TOS at Overview.

The TOS contains a section, "What you can share and do on Meta Products," that states, in relevant part:

> We can remove or restrict access to content that is in violation of these provisions. We can also suspend or disable your account for conduct that violates these provisions, as provided in Section 4.2.

*Id.* at Section 3.2.

The TOS contains a section, "Limits on liability," that states:

> We work hard to provide the best Products we can and to specify clear guidelines for everyone who uses them. Our Products, however, are provided 'as is,' and we make no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections. To the extent permitted by law, we also DISCLAIM ALL WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, AND NON-INFRINGEMENT. We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).
>
> We cannot predict when issues might arise with our Products. Accordingly, our liability shall be limited to the fullest extent permitted by applicable law, and under no circumstance will we be

United States District Court
Northern District of California

> liable to you for any lost profits, revenues, information, or data, or consequential, special, indirect, exemplary, punitive, or incidental damages arising out of or related to these Terms or the Meta Products (however caused and on any theory of liability, including negligence), even if we have been advised of the possibility of such damages. Our aggregate liability arising out of or relating to these Terms or the Meta Products will not exceed the greater of $100 or the amount you have paid us in the past twelve months.

*Id.* at Section 4.3 (emphasis in original).

Finally, the TOS contains a section, "Disputes," that states, in relevant part:

> We try to provide clear rules so that we can limit or hopefully avoid disputes between you and us. If a dispute does arise, however, it's useful to know up front where it can be resolved and what laws will apply.
>
> You and Meta each agree that any claim, cause of action, or dispute between us that arises out of or relates to these Terms or your access or use of the Meta Products shall be resolved exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County. You also agree to submit to the personal jurisdiction of either of these courts for the purpose of litigating any such claim, and that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions.

*Id.* at Section 4.4.

**2. The Parties' Relationship**

Scott used Facebook between 2021–2025. FAC at 6–16. Scott has a Facebook account under the name of "Aphrasia Lee" (the "Account"). *Id.* at 9. To improve security of her Account, Scott deactivates her Account weekly when it is not in use. *Id.* at 6. When her Account is deactivated, Scott's user profile and timeline "become inactive and are hidden from other users," no other Facebook users can see her Account, and Scott should not "receive notifications or messages through Facebook." *Id.* Scott also tries to improve the security of her Account by maintaining zero friends on the Account. *Id.* at 10. Finally, Scott posts content on her Account using "Only Me" posts which are "accessed or viewed only by the account owner." *Id.* at 11.

"On a few occasions," Scott's access to her Account was blocked "due to password being changed." *Id.* at 9–10. Meta locked Scott's Account on August 2, 2022. *Id.* at 13. During the eighteen months that Scott's Account was locked, "she submitted various forms of identification to verify account ownership and regain access" to her Account, but Meta did not reactivate her

United States District Court
Northern District of California

Account. *Id.* at 15. Scott regained access to her Account in November 2023 after she hired a lawyer to assist her with recovering the Account. *Id.* at 14.

Between 2021–2025, Scott sent emails to Meta reporting issues with her Facebook Account—she emailed "Facebook Help Support," "Facebook Security," "Mark Zuckerberg," and "Facebook Escalation Team." *Id.* at 10–11, 18–19.

**3. Scott's Allegations**

Scott alleges the following in the FAC. There are sixteen "incidents" that form the basis of Scott's claims. *Id.* at 2. Several incidents involve third parties gaining unauthorized access to Scott's Account. Scott's Account was accessed multiple times when the Account was deactivated, resulting in unauthorized friend requests being sent from her Account. *Id.* at 6–7. Friend requests were also accepted on Scott's Account without her knowledge, and Scott received email notifications about this activity. *Id.* at 7–8, 16. Third parties accessed Scott's "Only Me" posts and used the posts to "harass[] her offline by repeating the content of her posts." *Id.* at 11. Scott's member status was changed to "Administrator" in a group she joined, without her consent. *Id.* at 11–12. And during the eighteen months that Scott's Account was locked, she received many email notifications alerting her that her Account was accessed by third parties while locked. *Id.* at 13–14.

Several incidents involve technical problems with Scott's Account. When Scott's Account was accessed by unauthorized third parties, she received "late security notifications" instead of notifications within a reasonable time. *Id.* at 8–9. The Activity Log for Scott's Account contained "inaccurate account activity" and had activity removed without Scott being notified. *Id.* at 9, 14–15. Scott received "wrong STM codes" from Meta when she was locked out of her Account and trying to regain access. *Id.* at 9–10. Meta "deceptively displayed and reported the wrong number of people linked" to her Account. *Id.* at 10–11. When Scott logged off her Account, "her user data appeared as pages of HTML code for her to view," but user data is only "supposed to be accessible or viewable on the backend." *Id.* at 11.

One incident involves content Scott viewed on her Account. Scott received "friend suggestions" from Meta "of female users who were half-naked, bare breasted, or wearing lingerie"

United States District Court
Northern District of California

and explicit friend requests from "women who were in the sex trade." *Id.* at 12–13. This activity "happened concurrently with verbal offline harassment." *Id.* at 13. Scott "question[s] if it was Facebook employees who were responsible for bombarding her with friend suggestions laden with sexual content." *Id.*

Finally, some incidents involve Meta's lack of action in response to Scott contacting Meta. Meta ignored Scott's emails between 2021–2023, including during the period that her Account was locked. *Id.* at 15. Meta continued to block Scott's Account even after Scott "submitted various forms of identification" and did not reply to Scott's emails regarding regaining access to her Account. *Id.* Meta's lack of response "was intentional" and shows a disregard for how Scott was impacted psychologically and emotionally. *Id.* at 17–18. Scott experienced "severe emotional distress" and "physical symptoms . . . due to prolonged stress and duress" as "a direct result" of Meta's conduct. *Id.* at 19–21.

Overall, "the repeated access of [Scott's] Facebook account in an Inactive state lead [*sic*] to privacy intrusion, altered settings, and removal of content in the Activity Log which does not fall within the usual defects, disfunctions, or system errors that is mentioned in Meta's TOS, Section 4.3." *Id.* at 17. Even if Meta's TOS limit its liability, Meta still must comply with "statutory standards" that are set by the California Consumer Privacy Act (CCPA), Stored Communications Act (SCA), and Computer Fraud and Abuse Act (CFAA). *Id.* at 22. Meta violated these standards because it "knowingly facilitated unauthorized access and ignored systemic vulnerabilities that allowed access by third-party hackers." *Id.* at 22–24. Meta also violated Federal Trade Commission (FTC) "compliance due to its deceptive practice of representing security of inactive accounts, which is false." *Id.* at 23.

**B. Procedural Background**

On March 17, 2025, Scott, proceeding *pro se*, filed suit against Meta in the Supreme Court of the State of New York, County of Kings.[2] ECF No. 1-2 ("Compl."). Scott's Complaint does not contain explicit causes of action. Scott alleges that she suffered "psychological, emotional,

---

[2] *See Natalie Scott v. Meta Platforms, Inc. fka Facebook*, Index No. 237-2025.

and reputational damage, mental and emotional duress, and privacy violations that have resulted in unwanted tracking, facial profiling and tagging, stalking and harassment offline which has occurred over a period of 13 years." Compl. at 22. Further, Scott alleges that she was harmed by (1) "the neglect of Facebook to take measures to protect, inform, and respond to [Scott's] notifications and complaints of continued misuse of her account, and her pleas for help"; and (2) the "weaponization of her Facebook account by hackers, Facebook employees or any third party who manipulated settings and used it as a tool of offline harassment." *Id.* Scott requests "compensatory damages in the amount of $700,000 or the maximum amount allowed in civil court to compensate" her. *Id.*

On May 23, 2025, Meta removed the case to the United States District Court for the Eastern District of New York. ECF No. 1 ("Not. of Removal"). Meta alleges that federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Not. of Removal at 2. On October 24, 2025, the Eastern District of New York transferred the case to the Northern District of California.[3] ECF No. 28.

On January 13, 2026, Meta filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 39. On March 3, 2026, the Court granted Meta's motion and granted Scott leave to amend the Complaint. ECF No. 50.

On May 13, 2026, Scott filed the operative First Amended Complaint.[4] ECF No. 65 ("FAC"). In the FAC, Scott alleges four causes of action: (1) Negligence; (2) Intentional Tort; (3) Intentional Infliction of Emotional Distress (IIED); and (4) Invasion of Privacy. FAC at 16–23. Scott seeks "compensatory damages in the amount of $700,000 for privacy intrusion, unwanted exposure of her data, misrepresentation of security and privacy features, and enabling the removal of [Scott's] control of how and when her account was accessed and used to send data to other

[3] *See Scott v. Meta Platforms, Inc.*, No. 25-cv-2888-NRM(TAM), 2025 WL 2997300 (E.D.N.Y. Oct. 24, 2025).

[4] Scott filed several exhibits to her FAC separately. *See* ECF Nos. 66, 67, 68, 71, 72, 73. On July 17, 2026, Scott filed a "Revised Table of Exhibits which includes dates for all submitted Exhibits." ECF No. 89. The Court incorporates by reference Scott's filing at ECF No. 89 into her FAC.

users." *Id.* at 4.

On June 12, 2026, Meta filed the instant Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 77 ("Mot."). On July 7, 2026, Scott filed an Opposition. ECF No. 83 ("Opp."). On July 14, 2026, Meta filed a Reply.[5] ECF No. 87 ("Reply").

## III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (cleaned up). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *accord Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

[5] On July 15, 2026, Scott filed a document titled, "Reply to Meta's Reply on Opposition to Motion to Dismiss." ECF No. 88. The Civil Local Rules state that "[o]nce a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval," except for in limited circumstances not present here. Civ. L.R. 7.3(d). Scott did not request leave to file any document after Meta filed its Reply. Therefore, the Court **STRIKES** the filing at ECF No. 88 and does not consider it in ruling on Meta's Motion.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is particularly broad.") (cleaned up).

## IV. DISCUSSION

Meta moves to dismiss Scott's FAC in its entirety for failing to state a cognizable claim. Mot. at 1. Overall, Meta argues that (1) Meta's TOS bar Scott's claims; (2) the FAC fails to state a plausible claim; and (3) Scott's claims are barred by Section 230 of the Communications Decency Act. *Id.* at 1–2.

In sum, the Court concludes that Scott's claims are barred by Meta's TOS. Therefore, dismissal is warranted.

### A. Request For Judicial Notice

Meta requests the Court take judicial notice of one document: the Meta Terms of Service (TOS). Mot. at 2 n.1; *see* Duffey Decl., Ex. A. Scott does not oppose the request. *See generally* Opp.

Normally, when adjudicating a motion to dismiss brought pursuant to Rule 12(b)(6), the Court's consideration of extra-pleading materials is limited and matters outside of the pleading

United States District Court
Northern District of California

cannot be considered without converting the motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6), 12(d). However, there are two exceptions—the incorporation-by-reference doctrine and judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

Under the Federal Rules of Evidence, the Court may take judicial notice of matters that are (1) generally known within the trial court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).

Here, the Court agrees that it is appropriate to take judicial notice of Meta's TOS because Scott does not challenge their authenticity, and their contents are not subject to reasonable dispute. *See Trudeau v. Google LLC*, 349 F. Supp. 3d 869, 876 (N.D. Cal. 2018) (taking judicial notice of Google's terms of service because they are "not the subject of reasonable dispute and their authenticity is not in question").

Accordingly, the Court **GRANTS** Meta's request to take judicial notice of Meta's TOS.

**B. Meta's TOS**

Meta argues that the Court should dismiss the FAC "because the TOS, to which [Scott] agreed as a condition of using Facebook, both authorize and disclaim liability for the conduct alleged against Meta." Mot. at 5:17–9:1. Scott does not dispute that she agreed to Meta's TOS. *See generally* Opp. Scott contends that (1) her claims fall outside the TOS; and (2) even if the TOS limits Meta's liability "due to its 'as is' provision for its services, Meta still has to comply with statutory standards." *Id.* at 8–9, 17–19, 22–23.

In California, contract interpretation is a question of law "when it is based on the words of the instrument alone[.]" *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008). "Generally, a limitation of liability clause is intended to protect the wrongdoer defendant from unlimited liability." *Epochal Enters., Inc. v. LF Encinitas Props., LLC*, 99 Cal. App. 5th 44, 60 (2024) (cleaned up). "Such clauses have long been recognized as valid in California." *Id.* (cleaned up). "[T]hese clauses are appropriate when one party is offering a service for free to the public." *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015). "Waivers of liability that are

clear, unambiguous and explicit bar claims that expressly fall within their scope." *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (cleaned up).

Here, the Court concludes that Scott's claims plainly fall within the liability waiver in Meta's TOS. Section 4.3 of the TOS states that (1) Meta's Products "are provided 'as is,'" with "no guarantees that they always will be safe, secure, or error-free, or that they will function without disruptions, delays, or imperfections"; and (2) Meta is "not responsible for [others'] actions or conduct (whether online or offline) or any content they share." TOS at Section 4.3. The TOS, therefore, explicitly (1) disclaim any guarantee that Facebook "will be safe, secure, or error-free, or operate without disruptions; and (2) disclaim liability for third-party acts or conduct." *Kennedy v. Meta Platforms Inc.*, No. 23-cv-06615-HSG, 2024 WL 4565091, at *3 (N.D. Cal. Oct. 23, 2024). Scott's claims based on third parties gaining unauthorized access to her Account, technical problems with her Account, and Meta's failure to respond to Scott's emails regarding Account access and technical issues fall within the first provision of Section 4.3. FAC at 6–11, 14–21; *see* Mot. at 6:8–7:18; *see, e.g., Karam v. Meta Platforms, Inc.*, No. 3:25-cv-01397-AMO, 2025 WL 3079048, at *4 (N.D. Cal. Nov. 4, 2025) (finding causes of action "based on the conduct of third parties and Meta's purported response to such conduct," or "based on the functionality or security of Facebook" barred by Meta's TOS). And Scott's claims based on content she was exposed to through her Account that she deemed offensive fall within the second provision of Section 4.3. FAC at 12–13; *see* Mot. at 7 n.3; *see, e.g., Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1062–63 (N.D. Cal. 2016) (finding defamation claim barred by Meta's TOS because "Facebook is not responsible for content shared by other users"). Therefore, Meta's TOS bar Scott's claims.

Scott's arguments to the contrary are unpersuasive. First, Scott argues that she "is not holding Meta liable for the hacking" of her Account but for Meta "not securing" her Account and failing to respond to her complaints and emails regarding her Account. Opp. at 6. But the TOS bar claims based on Meta's alleged failure to safeguard a user's account against unauthorized use. Mot. at 6:8–25; *see Kennedy*, 2024 WL 4565091, at *4 (dismissing "Plaintiff's causes of action to the extent they are based on the alleged failure to keep Plaintiff's account secure and free from

United States District Court
Northern District of California

disruptions due" to third parties); *Young v. Meta Platforms, Inc.*, No. 24-cv-03583-HSG, 2025 WL 2930979, at *3 (N.D. Cal. Oct. 15, 2025) (dismissing claims "which are predicated on Defendants' alleged failure to keep Plaintiff's account secure and free from disruptions in response to the third-party conduct of hackers"). Moreover, nothing in the TOS "promises or guarantees that [Meta] will work with a user to restore access to an account at all, let alone on a specific timeline." *Kennedy*, 2024 WL 4565091, at *5.

Second, Scott argues that claims related to unauthorized access of "locked or deactivated accounts or stored inactive data should be considered outside the limits of a 'usual defect or imperfection' that is referred to in Meta's TOS." Opp. at 9, 17. But a locked or deactivated Facebook account is still a Facebook account. Scott provides no authority holding that the TOS apply differently to "inactive" accounts. Mot. at 8:14–9:1; Reply at 3:1–8.

Third, Scott argues that the TOS do not preclude claims based on Meta's violation of the CCPA, SCA, and CFAA. Opp. at 8–9, 18–19; *see* FAC at 22–24. It is true that Meta's TOS cannot shield it from violating the law. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."); *New England Country Foods, LLC v. VanLaw Food Prods., Inc.*, 17 Cal. 5th 703, 712 (2025) ("[L]imitations on damages for willful injury to the person or property of another are prohibited by section 1668."). However, Scott fails to plausibly plead a violation of the CCPA, SCA, or CFAA. Mot. at 12:2–20; Reply at 2:15–28. The CCPA applies to disclosure of "personal information," defined as "an individual's social security number, driver's license number, certain medical or genetic information, or information that would permit access to an individual's financial account." Mot. at 12:2–20 (citing Cal. Civ. Code § 1798.81.5(d)(1)). But Scott does not allege that any such personal information was accessed by third parties. *Id.* And the SCA and CFAA require unauthorized access of electronic devices or communications. *Young*, 2025 WL 2930979, at *4. "But here, [Scott] does not allege that [Meta] unlawfully accessed her Facebook account without authorization. Instead, she alleges that the hackers did so." *Id.*

United States District Court
Northern District of California

Accordingly, because all of Scott's claims are precluded by the TOS, dismissal of the entire FAC is warranted.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Meta's Motion to Dismiss the First Amended Complaint. Because Scott previously had an opportunity to amend, and her claims will be barred by the TOS no matter what additional facts she pleads, the Court **DENIES** Scott leave to amend. *See* Mot. at 15:9–16:3; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad.") (cleaned up); *cf. Pete v. Facebook Data Breach*, No. 25-cv-09081-JST, 2026 WL 32635, at *2 (N.D. Cal. Jan. 6, 2026) (dismissing complaint without leave to amend where claims barred by Meta's TOS and the "deficiency cannot be cured by amendment"); *Young*, 2025 WL 2930979, at *4 (dismissing amended complaint without leave to amend where claims directly barred by Meta's TOS).

**IT IS SO ORDERED.**

Dated: July 23, 2026

THOMAS S. HIXSON
United States Magistrate Judge